UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA MORALES,<br><br>            Plaintiff,<br><br>       v.<br><br>KILOLO KIJAKAZI,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>            Defendant. | Case No.  1:20-cv-00572-BAK<br><br>OPINION AND ORDER TO REMAND CASE TO COMMISSIONER[2]<br><br>(Doc. No.  21, 22) |

Maria Morales ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act.  (Doc. No. 1).  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos. 21-23).  For the reasons stated , the Court orders this matter REMANDED for further administrative proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.

[2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1).  (Doc. No. 10).

## I. JURISDICTION

Plaintiff filed for supplemental security income on February 27, 2017. (AR 229). Benefits were denied initially (AR 143-47) and upon reconsideration (AR 152-58). A hearing was conducted before Administrative Law Judge Carol L. Boorady ("ALJ") on March 27, 2019. (AR 37-71). Plaintiff was represented by counsel and testified at the hearing. (*Id*.). On May 23, 2019, the ALJ issued an unfavorable decision (AR 12-36), and on March 6, 2020, the Appeals Council denied review. (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 48 years old at the time of the hearing. (AR 66). She completed the tenth grade and attended special education classes. (AR 253). She is divorced and lives alone but previously lived with her mother and father. (AR 42). She does not have a driver's license. (AR 43). Plaintiff has a work history as a cashier. (AR 44, 66). Plaintiff testified that she could no longer work because she was depressed and could not be around people. (AR 45-46). She reported that she has problems being around more than one person, and she feels like they are laughing at her. (AR 48). Plaintiff sometimes stays in the house all day long and only goes out "once or seven times out of the month" she doesn't leave her apartment. (AR 48-49). She testified that she has gone five days without eating when she feels depressed, and she doesn't sleep all night "seven days out of the month." (AR 50). Plaintiff testified that she hears voices or "sees things" two to three times every hour, and she has problems concentrating and finishing tasks when she is hearing voices and seeing things. (AR 51-53, 56-57). She reported that she can walk for two to three hours before she has to take a rest, and she could not lift ten pounds all day long because it would bother her back. (AR 54-55).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is

1   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

2   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or

3   is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial

4   evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

5   conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

6   equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

7   citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

8   consider the entire record as a whole rather than searching for supporting evidence in isolation.

9   *Id.*

10       In reviewing a denial of benefits, a district court may not substitute its judgment for that of

11  the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

12  to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

13  2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

14  harmless. *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

15  nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's

16  decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

17  U.S. 396, 409-10 (2009).

18                     **IV.   SEQUENTIAL EVALUATION PROCESS**

19       A claimant must satisfy two conditions to be considered "disabled" within the meaning of

20  the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

21  activity by reason of any medically determinable physical or mental impairment which can be

22  expected to result in death or which has lasted or can be expected to last for a continuous period

23  of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment

24  must be "of such severity that he is not only unable to do his previous work[,] but cannot,

25  considering his age, education, and work experience, engage in any other kind of substantial

26  gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

27       The Commissioner has established a five-step sequential analysis to determine whether a

28  claimant satisfies the above criteria.  See 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the

Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational

factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.     ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 27, 2017, the application date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine and schizoaffective disorder. (AR 18). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 19). The ALJ then found that Plaintiff has the RFC:

> to perform light work as defined in 20 CFR 416.967(b) except she could occasionally climb ropes, ladders, scaffolds, ramps and stairs. She could occasionally stoop, kneel, crouch or crawl. She could perform work allowing her to avoid exposure to extreme cold or damp environments. She could remember, understand, and carry out simple, routine and repetitive tasks consistent with unskilled work. She could perform only simple decision-making related to basic work functions. She could tolerate only minor, infrequent changes within the workplace and could tolerate occasional interaction with supervisors and coworkers but in small numbers and for short periods with no tandem tasks and work is done relatively independently with minimal superficial interaction with the general public.

(AR 21). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 29). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including folding machine operator, clerical, garment sorter, and routing

clerk. (AR 30-31). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since February 27, 2017, the date the application was filed. (AR 31).

## VI.     ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;
2. Whether the ALJ properly considered Plaintiff's subjective complaints; and
3. Whether the ALJ erred at steps four and five.

(Doc. No. 21 at 8-20).

## VII.     DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion. *Id*. If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation

1 omitted).

2 As an initial matter, Plaintiff argues that the "opinions of the state agency physicians in this case are not substantial evidence because they did not review Dr. Michiel's [examining] evaluation and adopted a residual functional capacity that was based on evidence from the record prior to October 2015." (Doc. No. 21 at 15). While Plaintiff is correct that an ALJ generally may give more weight to treating or examining providers than non-examining providers, a nonexamining opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007). However, where the treating or examining providers' opinions are contradicted by medical evidence, the opinions still may be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. *See Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995). Thus, the salient question before the Court is whether the ALJ properly accorded weight to the reviewing and examining opinions, supported by substantial evidence in the record. Plaintiff argues the ALJ failed to properly consider the examining opinions of Dr. Ekram Michiel[3] and Dr. Dale Van Kirk. (Doc. No. 21 at 10-18).

**1. Ekram Michiel, M.D.**

On October 13, 2018, psychiatrist Ekram Michiel, M.D. conducted a psychiatric evaluation of Plaintiff, including a mental status examination, and based on his evaluation and observations during the interview, he opined that Plaintiff "is unable to maintain attention and concentration to carry out simple job instructions" and is able to handle her own funds. (AR 791-97). Dr. Michiel additionally completed a "medical source statement of ability to do work-related activities," wherein he opined that Plaintiff had marked limitations in her ability to make judgments on complex work decisions, respond appropriately to usual work situations, and respond to changes in a routine work setting; and moderate limitations in her ability to carry out simple instructions, make judgements on simple work-related decisions, understand and

---

[3] As correctly noted by Defendant, the ALJ misidentified the examiner as Michael Ebram, instead of Ekram Michiel, M.D. (Doc. No. 22 at 7 n.2).

7

1  remember complex instructions, carry out complex instructions, and interact appropriately with
2  supervisors and co-workers. (AR 795-97). Finally, Dr. Michiel opined that based on Plaintiff's
3  history and his evaluation, Plaintiff has impaired attention and memory capabilities. (AR 796).
4  The ALJ gave Dr. Michiel's opinion "limited weight, except that the [ALJ] agrees [Plaintiff] has
5  moderate limitations in some areas of functioning and is able to manage her own funds." (AR
6  29). The ALJ gave several reasons in support of this finding, all which Plaintiff argues "will not
7  survive the specific and legitimate standard of review." (Doc. No. 21 at 12-14).

8  First, the ALJ found that Dr. Michiel's only explanation for certain opined limitations was
9  to identify Plaintiff's "psychotic disorder," and "[w]hile some parts of his opinion would be work
10 preclusive, his only explanation was pointing to her history and his evaluation neither of which
11 support marked limitations." (AR 29). An ALJ may permissibly reject check-box reports that do
12 not contain any explanation of the bases for their conclusions. *See Crane v. Shalala*, 76 F.3d 251,
13 253 (9th Cir. 1996). Moreover, an ALJ may properly reject a medical opinion if it is inconsistent
14 with the provider's own treatment notes. *Tommasetti*, 533 F.3d at 1041. However, if treatment
15 notes are consistent with the opinion, a conclusory opinion, such as a check-the-box form, may
16 not automatically be rejected. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014);
17 *see also Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017) ("[T]here is no authority that a
18 'check-the-box' form is any less reliable than any other type of form"). Plaintiff argues this
19 "reason for rejecting Dr. Michiel's opinion is not specific, not legitimate, and unsupported by
20 substantial evidence." (Doc. No. 21 at 12). The Court agrees.

21 Defendant generally argues that Dr. Michiel's "sparse explanation for his conclusions
22 undermined his opinions," and further contends that the ALJ properly discounted Dr. Michiel's
23 opinion because it was "based on Plaintiff's own self-reported history." (Doc. No. 22 at 8 (citing
24 *Tommasetti*, 553 F.3d at 1041 (ALJ may reject an opinion if it was based "to a large extent" on a
25 claimant's self-reports that had properly been considered and discounted))). First, as noted by
26 Plaintiff, the Court is not permitted to consider reasoning that was not offered by the ALJ in the
27 decision. (Doc. No. 23 at 3); *See Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision
28 based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that

attempt to intuit what the adjudicator may have been thinking."). Thus, the Court will not consider Defendant's *post hoc* explanation the ALJ discounted Dr. Michiel's opinion because it was based on Plaintiff's self-report, as this reason was not offered by the ALJ in the decision. Moreover, as part of his evaluation, Dr. Michiel conducted an objective mental status examination that included findings that Plaintiff was unkempt, had poor personal hygiene, was guarded, scanned the room, was distracted in responding to internal stimuli, thought content was paranoid and guarded, mood was depressed, affect was intense and scared, thought process was goal-directed with blocking, and she admitted to auditory and visual hallucinations. (Doc. No. 21 at 12; AR 792-93). As to her cognitive skills, the ALJ found Plaintiff was oriented to person and place but missed the date, had impaired concentration, was able to recall three out of three items immediately and nothing after five minutes, could do simple math calculations, could not interpret proverbs, and was unable to recall the birthdays or exact ages of her three children. (AR 793). Plaintiff also reported to Dr. Michiel that she had auditory and visual hallucinations since age 15, she was in a psychiatric hospital in 2000, and at the time of the evaluation she was taking medications including, but not limited to, gabapentin, risperidal, lisinopril, and aspirin. (AR 791-92).

When considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. Here, Plaintiff correctly argues that the ALJ failed to explain with requisite specificity how the consistently abnormal clinical findings by Dr. Michiel, as detailed above, do not support his opined marked limitations. (Doc. No. 21 at 12). Thus, this was not a specific and

9

legitimate reason, supported by substantial evidence, for the ALJ to reject the examining of opinion of Dr. Michiel.

Second, the ALJ found that "[i]n contrast with these work preclusive portions of his opinion, [Dr. Michiel] also opined [Plaintiff] could manage her own benefits in her own best interest, which is internally inconsistent."  (AR 29 (citing AR 797)).  Internal inconsistencies within a physician's report constitute relevant evidence when weighing medical opinions. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).  Defendant generally argues this was a "reasonable conclusion supported by the [overall] record."  (Doc. No. 22 at 9). However, as noted by Plaintiff, the ALJ fails to specifically identify the "work preclusive" portions of Dr. Michiel's opinion, nor does she identify how these "work preclusive" portions of Dr. Michiel's opinion conflicted with his opinion that Plaintiff could manage her benefits in her own interest.  (Doc. No. 21 at 13); *Reddick*, 157 F.3d at 725 (when considering medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct."); *Brown-Hunter*, 806 F.3d at 495.  Moreover, Dr. Michiel specifically noted that Plaintiff could do simple math calculations, and he opined that Plaintiff only had a mild cognitive impairment in her ability to remember and understand simple instructions.  (AR 793-95).  The Court agrees with Plaintiff that "[t]here is no square inconsistency between these findings and Plaintiff's ability to manage her own funds.  In contrast, Dr. Michiel's opinion that Plaintiff had limitations that would prevent her from sustaining unskilled competitive work is not inconsistent with his clinical findings that Plaintiff responded to internal stimuli, she was distracted, her affect was intense and scared, and her attention and concentration were impaired."  (Doc. 21 at 14).  This single alleged "inconsistency" was not a specific and legitimate reason, supported by substantial evidence, to discredit the entirety of Dr. Michiel's opinion.  *Cf. Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) ("single discrepancy fails … to justify the wholesale dismissal of a claimant's testimony.").

Third, the ALJ generally found, without citation to the record, that "[i]n addition to being internally inconsistent, his opinion is not well supported and is not consistent with the overall

10

evidence of no more than moderate to mild limitations." (AR 29). As discussed in detail above, the ALJ's reliance on alleged internal inconsistencies and "lack of support" from his own clinical findings to discount Dr. Michiel's opinion is not supported by substantial evidence. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *Orn*, 495 F.3d at 631; *see also Batson*, 359 F.3d at 1195 (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings). However, as above, the ALJ fails to explain how Dr. Michiel's findings are inconsistent with "overall evidence of no more than moderate to mild limitations." *Reddick*, 157 F.3d at 725 (when considering medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct."); *Brown-Hunter*, 806 F.3d at 495. Presumably, the ALJ is referencing the nonexamining state agency reviewing opinions that assessed mild to moderate mental limitations, which the ALJ gave "some weight"; and the "fairly normal" mental status examinations cited elsewhere in the ALJ opinion that noted Plaintiff was fully alert and oriented, cooperative and pleasant, normal motor activity, linear thought processes, normal thought content, and normal insight and judgment. (AR 27, 404-05, 436-40, 446, 448, 628-30, 772-74, 798-800, 813, 830, 853-54).

However, the same treatment notes cited by the ALJ also noted that Plaintiff presented with flat affect, auditory hallucinations, visual hallucinations, depression, soft and quiet speech, anxious and depressed mood, restricted affect, and derogatory thought content. (*Id.*). Moreover, the longitudinal record includes consistent observations that Plaintiff had problems with her memory, was a poor historian, and that she was experienced ongoing auditory and visual hallucinations even while taking medication. (AR 523, 534-35, 545 (thought process "filled with blanks," 550, 630 (unable to keep focus), 633, 638 (needs encouragement and education to keep taking medication), 641 (experiencing intense derogatory hallucinations), 649 (had difficulty remembering information), 653 (discussed ways to help with memory problems), 657 (noting memory problem), 671 (difficulty concentrating), 678 (had trouble remembering and did not understand questions), 769 (needs constant repetition of directions due to poor short term

1  memory), 857 (reporting auditory and visual hallucinations), 860, 862, 866 (late for appointment
2  because she got confused and "forgot").  For all of these reasons, the ALJ's conclusory finding
3  that Dr. Michiel's assessed limitations are not consistent with the "overall evidence" was not a
4  specific and legitimate reason, supported by substantial evidence, to reject the only examining or
5  treating opinion in the record.  The ALJ must reconsider Dr. Michiel's medical opinion on
6  remand.

**2.  Dale Van Kirk, M.D.**

In September 2018, Dr. Dale Van Kirk conducted a physical examination of Plaintiff and diagnosed her with chronic lumbosacral musculoligamentous strain/sprain, likely associated with degenerative disc disease.  (AR 780-89).  Dr. Van Kirk opined that due to low back pain with restricted range of motion, Plaintiff could stand and/or walk cumulatively for 6 hours out of an 8-hour day; sit without restriction; lift and carry 10 pounds frequently and 20 pounds occasionally; was limited to only occasional postural activities; had no manipulative limitations; and she should not be required to work in extremely cold and/or damp environments.  (AR 782-83).  Dr. Van Kirk also completed a medical source statement that reflected the same functional limitations, with the added finding that Plaintiff could only sit, stand, or walk for 1 hour at a time "without interruption."  (AR 785).  The ALJ gave Dr. Van Kirk's opinion "mostly great weight and [] adopted most of the restrictions he opined except for the limitation of 1 hour at a time for sitting, standing, and walking."  (AR 27-28).

Plaintiff argues the ALJ erred by failing to give "legally adequate reasons even when she only partially rejects the opinion of an examining physician."  (Doc. No. 21 at 17).  Defendant contends that Plaintiff's argument is "a misunderstanding of the requirements of light work, which, in the Social Security vocational context, considers an ability to stand and/or walk for six hours per day. . . . Therefore, Dr. Van Kirk's opinion that Plaintiff could stand and/or walk within that limitation does not conflict with the ALJ's finding that Plaintiff had the functional ability to perform 'light work.'"  (Doc. No. 22 at 15).  However, regardless of whether the assessed RFC properly limited Plaintiff to light work based on the overall evidence of record, the issue remains as to whether the ALJ properly supported his specific rejection of Dr. Van Kirk's opinion that

Plaintiff was limited to 1 hour at a time for siting, standing, and walking.  As noted above, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors,' are correct."  *Reddick*, 157 F.3d at 725; *Brown-Hunter v. Colvin*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  Here the ALJ failed to either provide specific and legitimate reasons, supported by substantial evidence, to reject the limitation of 1 hour at a time of standing, sitting, and walking, or to properly incorporate the limitations into the assessed RFC.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations").  This constitutes error.

Further, the reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination."  *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).  Here, as noted by Plaintiff, there was no testimony from the vocational expert regarding a limitation to 1 hour at a time of standing, sitting, and walking; thus, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit Dr. Van Kirk's opinion.  *See Hill*, 698 F.3d at 1161 (when the ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete . . . [disability] determination.").  Based on the foregoing, the Court finds the ALJ erred by failing to properly reject the limitation of 1 hour at time for sitting, standing, and walking opined by Dr. Van Kirk or incorporate it into the assessed RFC.  On remand, the ALJ must reconsider Dr. Van Kirk's opinion along with the relevant medical opinion evidence.

### B. Additional Assignments of Error

Plaintiff additionally challenges the ALJ's rejection of Plaintiff's symptom claims, and

her findings at steps four and five. (Doc. No. 21 at 17-20). Because the ALJ's assessment of Plaintiff's symptom claims, and the finding at steps four and five are at least partially dependent on the ALJ's reevaluation of medical evidence, including the examining opinions of Dr. Michiel and Dr. Van Kirk, as discussed above, the Court declines to address these challenges in detail here. On remand, the ALJ is instructed to reconsider Plaintiff's symptom claims and the medical opinion evidence, and conduct a new sequential analysis, including a reassessment of the steps four and five finding if necessary.

**C. Remedy**

Plaintiff contends that the Court should remand for a payment of benefits, or in the alternative, the Court should remand for further proceedings. (Doc. No. 21 at 20). The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds in this case that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational

1  expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence,
2  and not all essential factual issues have been resolved, a remand for an award of benefits is
3  inappropriate." *Treichler*, 775 F.3d at 1101. Thus, the Court remands this case for further
4  proceedings.

5  On remand, the ALJ should reconsider the medical opinion evidence, and provide legally
6  sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary,
7  the ALJ should order additional consultative examinations and, if appropriate, take additional
8  testimony from medical experts. The ALJ should also reevaluate Plaintiff's symptom claims.
9  Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess
10 Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which
11 includes all of the limitations credited by the ALJ.

12 Accordingly, it is **ORDERED**:

13 1. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the
14    Commissioner's decision and REMANDS this case back to the Commissioner of
15    Social Security for further proceedings consistent with this Order.
16 2. An application for attorney fees may be filed by separate motion.
17 3. The Clerk shall terminate any motions and deadlines and close this case.

Dated:    March 30, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE